OPINION
This accelerated calendar case emanates from a judgment of the Lake County Court of Common Pleas, Domestic Relations Division, granting the motion of defendant- appellee, Norman W. Luke, to modify his child support obligation.
Appellee and plaintiff-appellant, Sharon A. Luke, were divorced on February 15, 1990. The divorce decree granted the parties joint custody over their one child, Ashley (d.o.b. August 25, 1986). Under the decree, the child would spend one-half of each week living with her mother and the remaining half living with her father; this was feasible because the parties lived within a few miles of each other in Mentor, Ohio. Appellee was ordered to pay appellant $30 per week in child support.
In 1994, appellant moved to Westlake, Ohio. This, along with the child's school and extra-curricular activities, made the parenting arrangement under the decree less feasible. As a result, the joint custody portion of the divorce decree was transmuted into a shared parenting plan on September 18, 1995, wherein the child would reside with appellee during her school year, and the child would reside with appellant during the summer months. Both parents were given companionship rights with the child during the time period in which she resided with the other parent. The time each parent spent with the child amounted to an approximate annual 50/50 apportionment.[1]
Prior to this modification, the parties had filed with the court a handwritten document, signed by both, that purported to modify the joint custody plan, providing for an equal (50/50) division of time in which the child would reside with each parent. The court did not sign this document or enter judgment on it until over fifteen months later, after the magistrate filed the decision and the court filed the judgment entry that gives rise to this appeal.[2]
After the court altered the joint custody provision in September 1995, appellee filed a motion to modify his child support obligation on March 22, 1996, because the child would reside with him longer under the new arrangement.[3] A hearing was held before a magistrate on the issue on August 22, 1996, after which the magistrate recommended that appellee's child support obligation be terminated. After a second hearing on September 27, 1996, the magistrate issued her decision on October 25, 1996, reiterating her recommendation that appellee's child support obligation be terminated and recommending that the court order appellant to pay $215 per month in child support to appellee.
In calculating appellant's obligation, the magistrate completed a child support worksheet. The parties stipulated that appellee's income for 1995 was $45,000, as was appellant's. The magistrate averaged appellee's income over a period of three years (1993-1995) due to the sporadic nature of his work as a union plumber, but used appellant's 1995 income. These calculations resulted in appellant's income being higher than appellee's for purposes of child support. After computing each party's respective obligation and deducting child care costs from appellant's share, the magistrate purportedly[4] reduced appellant's share by half, giving her credit for the time the child would live with her. The magistrate did not give appellant credit for any support appellee would owe her for the time the child was in her care (i.e., the magistrate did not offset the parties' respective support obligations).
On November 11, 1996, appellant filed a general objection to the magistrate's decision, claiming the recommendation regarding child support was incorrect. She requested and was granted a continuance to file more specific objections. After several continuances, appellant failed to file specific written objections.
A hearing was held before the trial court on appellant's general objection, at which appellant made specific oral objections to, inter alia, (1) the magistrate's supposed failure to accept the parties' stipulations regarding their incomes and (2) the magistrate's failure to give appellant credit for her time with the child. Appellee did not object to the court's consideration of appellant's oral objections.
By a judgment entry dated February 13, 1997, the trial court modified the magistrate's decision to the extent that it contained a typographical or mathematical error regarding appellant's child support obligation; the $215 per month order should have been $245 per month. Appellant's other objections, relevant to this appeal, were overruled. Appellant timely appealed this judgment entry, raising the following as error:
 "[1.] The trial court erred when it declined to use appellant and appellee's stipulated income figures for the calculation of the child support obligation.
 "[2.] The trial court erred in its application of the statute for the child support guidelines in that it labeled the appellant/mother a participant of a shared parenting plan as an obligor instead of a residential parent."
Appellee failed to file a brief. As a result, we "may accept the appellant's statement of the facts and issues as correct and reverse the judgment if appellant's brief reasonably appears to sustain such action." App.R. 18(C).
We begin our analysis of this case by articulating the appropriate standard of review. Generally, matters pertaining to termination of the marriage contract, including child custody and support, are left to the sound discretion of the court. Miller v.Miller (1988), 37 Ohio St.3d 71, 74. A court's decision regarding child custody and support will not be reversed absent a showing that the court abused that discretion, which "connotes more than a mere error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemorev. Blakemore (1983), 5 Ohio St.3d 217, 219.
Next, we must address the issue of appellant's failure to filespecific written objections to the magistrate's decision as is required by Civ.R. 53(E)(3). Civ.R. 53(E)(3)(b) prohibits a party from raising as error on appeal the trial court's adoption of the magistrate's decision if she fails to file objections to the magistrate's decision "under [the] rule." Because appellant did not file specific written objections to the magistrate's decision and merely made oral objections at a hearing before the trial court, Civ.R. 53(E)(3)(b) would seem to preclude our review of the merits of appellant's contentions; however, appellee has not objected to the trial court's or this court's consideration of appellant's oral objections. Appellee has also failed to file a brief on appeal. App.R. 18(C). Moreover, the trial court, after noting that appellant failed to file specific written objections, addressed, in sufficient detail to enable review thereof, all of appellant's objections that were raised at the hearing. As a result, we will address the merits of appellant's contentions.
By her first assignment of error, appellant maintains the court below erred in declining to use the parties' stipulated income figures; specifically, she argues the court should have utilized appellee's 1995 stipulated income figure rather than averaging his income over a period of three years.
R.C. 3113.215(B)(5)(h) states that "[w]hen the court * * * calculates gross income, [it], when appropriate, may average income over a reasonable period of years." The statute expresslypermits the court to average income over a reasonable period of years when determining the income of a party or parties. The only guideline the statute supplies is that this provision is to be used in "appropriate" cases. Cook v. Cook (Feb. 9, 1996), Lake App. No. 95-L-115, unreported, at 4. As with other domestic relations matters, the court's decision to utilize this mechanism is within the sound discretion of the court and will not be overturned absent a showing of an abuse of that discretion. Id.
Appellant contends that the parties stipulated that appellee's income was $45,000. In actuality, the parties stipulated thatappellee's 1995 income was $45,000; they did not stipulate that appellee's income, for purposes of the child support worksheet, was that amount. At the hearing, there were several stipulations regarding appellee's income in 1994, 1995 and 1996. Each party testified at length regarding his and her respective employment and earnings histories. Appellee testified that his income fluctuated from year-to-year due to the nature of his vocation as a union plumber; he testified that only two times in his eighteen years of experience has he worked fifty or more weeks in a year. Appellant testified that appellee often received "barter income," meaning appellee would perform plumbing work in exchange for other favors, such as labor in putting a new roof on his home. However, she did not present any evidence of the value of the "barter income" or the time appellee received it. The testimony revealed that appellant's income, as a registered nurse at Meridia Euclid Hospital, is relatively steady, with little fluctuation in how many weeks per year she works.
From this evidence, we cannot conclude the trial court abused its discretion in deciding to average appellee's income pursuant to R.C. 3113.215(B)(5)(h), in light of the testimony that his income is not predictable from year-to-year. Moreover, the court's decision to utilize appellant's 1995 income for purposes of computing child support does not constitute an abuse of discretion because the evidence indicated her income is relatively consistent.
Appellant's first assignment of error is not well-taken.
By her second assignment of error, appellant contends the court erred in labeling her an obligor parent, rather than a residential parent under the statute. She claims the court erroneously refused to grant her "credit" for the time the child lives with her.
The Supreme Court of Ohio recently addressed the issue of whether a parent paying child support under a shared parenting plan is entitled to an automatic credit for the time the child or children live with that parent under the plan in Pauly v. Pauly
(1997), 80 Ohio St.3d 386.[5] Timothy and Patricia Pauly were divorced in 1995. They entered into a shared parenting plan for their two children which provided that the children would reside primarily with their mother. The children would stay with their father one evening per week and on alternating weekends. Holidays and vacations were also divided in the plan. Mr. Pauly was ordered to pay $183.38 per month in child support. A few months after the divorce decree was filed, Mrs. Pauly requested an increase in child support. After a hearing was held before a magistrate, it was recommended that Mr. Pauly's child support obligation be increased to $376.42 per month. The trial court, overruling Mr. Pauly's objection, concluded that he was not entitled to an automatic credit for time spent with his children and that he did not present a valid reason to deviate from the mandatory child support worksheet. The court then adopted the magistrate's decision and the court of appeals affirmed.
On discretionary appeal, the Supreme Court agreed that a parent who is ordered to pay child support under a shared parenting plan is not entitled to an automatic credit for the time the child or children reside with him under the plan. Id. at 389. Rather, such a credit is a deviation from the mandatory child support guidelines in R.C. 3113.215(B), which deviation requires a showing that the amount of child support calculated under the worksheet would be unjust or inappropriate to the child or either parent and would not be in the best interest of the child. Id. In making this determination, a court is directed to consider the factors in R.C. 3113.215(B)(3) or the extraordinary circumstances outlined in R.C. 3113.215(B)(6)(b), which include the amount of time the child spends with each parent, the ability of each parent to provide adequate housing for the child, and the amount of expenses each parent sustains.
In reaching this holding, the Court concluded that R.C.3113.215(C), which provides that the residential parent shall not be ordered to pay the child support obligation calculated in the worksheet, is inapplicable to child support orders made pursuant to a shared parenting plan. Id. at 388-389. The effect of this portion of the Pauly court's decision upon the present case can be seen by reviewing the provisions in 3113.215 regarding child support generally.
In a "traditional" arrangement where one parent is designated the residential parent and the other parent is given companionship rights, R.C. 3113.215(B)(1) supplies the mandate to the court regarding the determination of child support:
 "In any action in which a child support order is issued * * * the court * * * shall calculate the amount of the obligor's child support obligation in accordance with the basic child support schedule in Division (D) of this section, the applicable worksheet in division (E) or (F) of this section, and the other provisions of this section * * *. * * * [T]he amount of child support that would be payable under a child support order, as calculated [above] is rebuttably presumed to be the correct amount of child support due, and the court * * * shall order that amount to be paid as child support unless [that amount] would be unjust or inappropriate and would not be in the best interest of the child * * * [and the court makes that finding in a judgment entry]."
So, in the "traditional" setting, the court is instructed to complete the child support worksheet and issue an order in accordance with those computations unless it finds it would not be in the child's best interest to do so. The worksheet contains two columns, one for each parent. After all of the calculations are completed, the two columns of line 24 each contain a figure representing the annual support obligation of each parent. R.C.3113.215(C) provides, however, that the parent who has been designated the residential parent shall not be ordered to pay to the child support enforcement agency the figure that appears in his or her column on line 24. It is presumed that the residential parent will spend the amount calculated in the worksheet directly for the care of the child. R.C. 3113.215(C). The non-residential parent is then ordered to pay to the child support enforcement agency for the benefit of the child the figure contained in his or her column on line 24, unless the court makes the requisite findings for a deviation.
Similar to the provision in R.C. 3113.215(B)(1) for "traditional" arrangements, R.C. 3113.215(B)(6)(a), which applies to shared parenting plans, states:
 "If the court issues a shared parenting order * * *, the court shall order an amount of child support to be paid under the child support order that is calculated in accordance with the schedule and with the worksheet set forth in division (E) of this section * * * [unless that amount] would be unjust or inappropriate * * * and would not be in the best interest of the child * * * [and the court makes that finding in a judgment entry]."
So, when contemplating an order of child support under a shared parenting plan, the court is likewise required to issue an order in accordance with the computations in the worksheet unless it finds it would not be in the child's best interest to do so. Unlike the "traditional" arrangement, however, R.C. 3113.215(C), which negates the residential parent's obligation under the worksheet, does not apply to a shared parenting order, according to the Supreme Court's recent ruling in Pauly. Thus, referring back to R.C. 3113.215(B)(6)(a), it follows from Pauly and the statute that both parents under a shared parenting plan are required to pay child support as calculated in the child support worksheet. In our considered opinion, this would suggest an "offset" of one obligation from the other, rather than two support orders.[6] Although the Pauly court did not expressly so hold, it is reasonable to conclude from its decision that before a court reaches the issue of whether to deviate from the guidelines by giving a parent credit for time the child resides with that parent it must first offset each parent's child support obligation from the other's.[7]
In this case, the court did exercise its discretion to give appellant credit for the time the child resides with her under the plan. The magistrate filed a document indicating her intention to deviate from the child support guidelines by decreasing appellant's support obligation by half, due to the fact that the parties spend approximately equal time with the child. The magistrate also found the deviation was in the best interest of the child because the amount of support calculated under the worksheet would be inappropriate. R.C. 3113.215(B)(6)(a). The court accepted these findings and adopted this deviation. These were acceptable grounds upon which to base the deviation from the worksheet. R.C. 3113.215(B)(6)(i).
The magistrate and the court were incorrect, however, in failing to offset appellant's obligation with that of appellee, both of which were calculated and appear in line 24 of the worksheet, or in any way recognizing the financial obligation appellee bears in supporting the child pursuant to the child support worksheet before making the decision to credit appellant's obligation for any time the child resides with her.[8]
Line 24 of the worksheet in this case reveals that appellant's annual child support obligation is $5,869.06, which amounts to $489.09 monthly. It also reveals that appellee's child support obligation is $4,075.19, which amounts to $339.60 monthly. Before the court could consider deviating from the guidelines, as it did, it was required to offset appellee's obligation from appellant's or in some way recognize appellee's support obligation. Pauly,supra and R.C. 3113.215. If it had offset the obligations, appellant's net monthly obligation would be $149.49. From thispoint, the court was permitted to consider whether to give appellant credit for the time the child resides with her, but failed to make the necessary preliminary calculation.
The assignment of error is sustained.
In accordance with the foregoing, the judgment of the Lake County Court of Common Pleas, Domestic Relations Division, is reversed and the cause is remanded for further proceedings not inconsistent with this opinion. Upon remand, the court is instructed to offset appellee's support obligation from appellant's. It may then consider whether to grant appellant any credit for time the child resides with her.
ROBERT A. NADER, JUDGE.
FORD, P.J., and CHRISTLEY, J., concur.
[1] In actuality, the plan provided a 45/55 division of time with appellant receiving the smaller share.
[2] The court filed a judgment entry on October 30, 1996, which basically accepted the parties' mutual agreement as reflected in this handwritten document. But, as the court correctly noted in its judgment entry of February 13, 1997, the October 30, 1996 modification of the shared parenting plan was not before the magistrate for consideration and, thus, should not serve as a basis for modifying the magistrate's recommendation. The proper procedure for modification of the child support obligation, based upon the new shared parenting plan, is to file another motion which the court will consider "in the due course of business."
[3] Appellee initially filed a motion for modification of child support on October 13, 1995, which was dismissed on February 22, 1996. He then refiled his motion on March 22, 1996.
[4] A typographical or mathematical error occurred, however, and appellant's obligation was reduced by approximately fifty-six percent, although the magistrate specifically stated she intended to reduce it by fifty percent.
[5] By their decision in Pauly, announced on December 10, 1997, the Supreme Court resolved a conflict among the appellate districts regarding the issue of an automatic credit to the "obligor" parent under a shared parenting plan. Several districts concluded the parent was not entitled to an automatic credit. Pauly v. Pauly (Apr. 26, 1996), Lucas App. No. L-95-293, unreported, 1996 WL 199185 (Sixth District); Critzer v. Critzer (Oct. 23, 1995), Butler App. No. CA95-03-043, unreported, 1995 WL 617487 (Twelfth District); Wells v. Wells (Jan. 3, 1994), Coshocton App. No. 93-CA-7, unreported, 1994 WL 22888 (Fifth District). Other districts, including this one, concluded the parent was entitled to an automatic credit. Beard v. Beard (Apr. 7, 1997), Portage App. No. 96-P-0011, unreported (Eleventh District); Weddell v.Weddell (June 29, 1994), Montgomery App. No. 14274, 1994 WL 312933 (Second District); Looker v. Looker (Dec. 29, 1992), Franklin App. No. 92AP-1064, unreported, 1992 WL 394860 (Tenth District). To the extent the latter cases conflict with the holding of the Supreme Court in Pauly, they have been implicitly overruled.
[6] The Pauly court did not address the "offset" issue. In fact, it did not provide any instructions for the proper implementation of its decision that R.C. 3113.215(C) does not apply to shared parenting orders. The failure to do so may result in the practical problem of determining whether courts are required to issue two child support orders, one to each parent to pay support to the other parent, or are permitted to "offset" one obligation from the other and issue only one "net" order. In our view, requiring courts to file two orders, which results in increased poundage and bureaucracy, would seem unreasonable and unfair to parents and, in turn, not in the best interest of the children.
Nothing in the child support worksheet, other provisions of the Revised Code or case law prevents a court from "offsetting" the dual obligations of parents under R.C. 3113.215, as opposed to issuing two support orders. In fact, R.C. 3113.215(B)(6)(a) states, "the court shall order an amount of child support to be paid * * * as calculated in accordance with the schedule and with the worksheet * * *." (Emphasis added.) By using the singular, the General Assembly failed to make it clear that, under these circumstances, it contemplated two orders. In State v. Gaul (Mar. 21, 1997), Cuyahoga App. No. 70131, unreported at 16, 1991 WL 150120, the Eighth Appellate District held that when a statute authorizes the performance of an act but fails to specify the method of doing so, any reasonable means to accomplish the act may be employed. In the case of calculating a child support obligation under a shared parenting plan, the statute does not provide any guidance regarding how a court is to handle dual support obligations beyond the general "best interest of the child" test utilized in all dealings affecting children. We think the more reasonable practice would be to permit courts to issue one "net" support order to the parent whose obligation is greater under the support worksheet, rather than issue two support orders. In fact, in our view, it would be unreasonable to issue two support orders, absent some special circumstance.
We would also note that, in this case, we can perceive no functional, mathematical difference between the calculations required under our decision in Beard, supra, and the Supreme Court's decision in Pauly. The method of calculation is different, but the end result is the same. Nonetheless, we are bound by the Supreme Court's ruling, and must conduct our analysis in accordance with the ruling established in Pauly.
[7] The concepts of "credit" and "offset" are separate and distinct and must not be confused. In using the term "offset," we are referring to the process by which the court, before it considers any deviation, deducts the figure in line 24 of the worksheet of the parent who has the lesser obligation from the figure in line 24 of the worksheet of the parent who has the greater obligation. When dealing with a shared parenting plan, this calculation is mandatory and must be completed before the court considers giving the parent a "credit" for the time the child resides with her. In utilizing the term "credit," as the court did in Pauly, we are referring to a reduction from the child support obligation, calculated in the worksheet, that a court is permitted to give for time the child resides with the parent who will be or has been ordered to pay child support. This reduction is discretionary with the court. Pauly. Both of these calculations must be completed before the obligation is reduced to an order.
[8] For instance, the court could have issued two orders, even though the more reasonable practice, as discussed previously, would be to issue one "net" order.